UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

GUY BLAISE,

         Plaintiff,

  -against-

VERIZON NEW YORK, INC.

        Defendant.

------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Jury Trial Demanded
On All Issues

Index No.:

CV 17- 00125

SPATT, J.

BROWN, M. J.

Plaintiff, by his attorney, Law Offices of Louis D. Stober, Jr., LLC, respectfully alleges as follows:

## PURPOSE OF ACTION

1.  Plaintiff commences this action for the purpose of seeking appropriate remedies and redress for violations of rights secured by Title VII of The Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Article 15 of the New York State Executive Law § 296 ("Human Rights Law").

## JURISDICTION AND VENUE

2.  Plaintiff has exhausted all administrative remedies by filing with the Equal Employment Opportunity Commission ("EEOC"). After the EEOC conducted their investigation, they issued a right to sue letter on November 1, 2016. A Right to Sue Letter was received on November 7, 2016 for EEOC Charge Number 846-2015-16975. (Ex. A).

3.     This Court has original subject matter jurisdiction of this action as a Federal Question pursuant to 28 U.S.C. §§ 1331 and 1337, and 42 U.S.C. § 2000-e et seq. and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue lies in this District in that the causes of action all arose within the Eastern District of New York, Nassau County, New York.

5.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6.     Plaintiff GUY BLAISE (hereinafter "Blaise") is a resident of Baldwin, New York. He was employed as a Local Manager at Verizon from on or about August 1, 1998 until on or about February 10, 2015.

7.     Defendant VERIZON NEW YORK INC. ("Verizon"), is a domestic business corporation duly organized and existing under and by virtue of the law of the State of New York; and at all times relevant herein was Plaintiff's employer.

8.     Upon information and belief, Verizon maintains a place of business located at 140 West Street, 20th Floor, New York, New York 10007.

## STATEMENT OF FACTS

9.  Plaintiff is a 50-year old African-American male who began his employment with Verizon on or around June 2, 1992 as a Technician. Plaintiff worked his way to being promoted to the position of Local Manager on or around August 1, 1998.

10. Plaintiff was one of the only African-American managers in his division.

2

11. Plaintiff was the oldest manager in his division.

12. Plaintiff majored in Telecommunication and Information Management and obtained his Masters of Science from the Polytechnic Institute of New York University in 2002.

13. Plaintiff worked in the Nassau County field office and had a great rapport with his subordinates and fellow managers.

14. Plaintiff's performance was always superior to that of his colleagues. Plaintiff consistently exceeded all of his performance goals and every year for the past five (5) years, Plaintiff earned the distinction of being the leading manager for his division.

15. In or around June 2014, Plaintiff's fellow manager, Archie Sarris ("Sarris"), was being investigated for altering time sheets, for refusing to pay his subordinates overtime and for changing time sheets to ensure his subordinates would not get paid for overtime they actually worked.

16. Sarris is a Caucasian male in his mid-forties. Sarris was not recognized in 2014 for his abilities as manager and was not recognized as being the top manager.

17. Sarris admitted to the investigators that he altered time sheets and refused to pay workers for the overtime they actually worked.

18. A few months after the Sarris investigation, Verizon interviewed Plaintiff.

19. Plaintiff requested to have an individual present to attend the meeting with him because he was not privy to the reason for the interrogation.

20. During his entire twenty-two year career with Verizon, Plaintiff had never been in such a situation.

3

21. Plaintiff's request to have an individual present was denied and he was informed that he was to attend the interrogation with the Verizon investigators on his own.

22. In or about September 2014, Plaintiff received a phone call from Verizon Investigator, Steve McDonald ("McDonald").

23. During the phone call McDonald stated "Guy Blaise, I'm your worst nightmare." Plaintiff asked McDonald to clarify his statement and McDonald responded by stating "You'll see who I am, I need to schedule a meeting with you to speak."

24. Prior to this phone call Plaintiff had never interacted with McDonald.

25. In or about October 2014, Plaintiff met with McDonald and another Verizon Investigator, Kevin Houston ("Houston").

26. During the meeting, Plaintiff was presented with two (2) time sheets and was asked if he had made any alterations to the sheets. The first-time sheet was that of Daniel McComb ("McComb"), dated September 29, 2014. Plaintiff was asked why he put an hour of overtime for McComb when McComb wrote that he was on the job for nine (9) hours. Plaintiff pointed out that the time sheet actually stated that McComb, according to the GPS records of the vehicle in use, was stuck in the garage for an hour due to a vehicle issue and was waiting for the hour to get his vehicle fixed.

27. Plaintiff was then shown the time sheet of Timothy Marshall ("Marshall"). Marshall was not an employee under Plaintiff's supervision. Because Marshall was not under Plaintiff's supervision, Plaintiff denied any allegations of tampering with the time sheet.

28. Plaintiff then stated that if he ever did make changes to time sheets it was in accordance with the policies and protocols of Verizon. In fact, Plaintiff was directed by Susan Sias Williams ("Williams") to alter time sheets to correctly reflect employee hours.

29. During the entire interrogation, McDonald had a predisposed negative attitude towards Plaintiff. McDonald was not a competent investigator as he alleged that he previously interviewed Plaintiff for the same allegations, however that never occurred.

30. Prior to this interview there had been no previous complaints or any allegations of any type of wrongdoing against Plaintiff.

31. During the meeting, Plaintiff, did not admit to any wrongdoing or misconduct.

32. Plaintiff was then excused from the meeting and was never informed of the outcome of the investigation.

33. From that day, Plaintiff lived in fear of losing his job.

34. Plaintiff was then chosen as the leading manager for 2014. Being chosen as the leading manager entitled Plaintiff to a higher bonus, about $18,000, over and above his normal bonus.

35. As a Manager, Plaintiff supervised twenty (20) subordinates. His duties included but were not limited to: reviewing time sheets, ensuring that his subordinates time was delineated correctly, making changes when informed by Human Resources to do so, assigning work, scheduling subordinates work, disciplining subordinates and motivating his team to be the most productive.

36. Plaintiff never had any complaints issued against him regarding his work ethic or his input of time. Plaintiff also never received any complaints about any of his subordinates.

37. Upon information and belief, not a single subordinate of the Plaintiff complained that they were not being paid for overtime they worked. There were also never any complaints made regarding Plaintiff's management style.

38. Despite this investigation, Plaintiff continued to work in his capacity as Local Manager and occasionally acted as the Acting Supervisor. Plaintiff performed Supervisor duties and even trained a new local manager.

39. Plaintiff was never disciplined or reprimanded for any type of infraction or misconduct.

40. In the weeks leading to the termination, Plaintiff was informed by his subordinates on an daily basis that he was going to be terminated as part of the investigation.

41. Plaintiff's subordinates obtained this information from customers they serviced in McDonald's neighborhood. The customers stated that they were informed by McDonald himself that Plaintiff was going to be terminated as part of the investigation.

42. Thus, McDonald breached any type of anonymity that he was required to have as an investigator in the matter.

43. Plaintiff lived in fear for the next five (5) months not knowing whether the rumors were true.

44. Five (5) months after the interview, on February 10, 2015, one week before Plaintiff was to receive his bonus for being leading manager, Plaintiff was summarily terminated.

45. Plaintiff was informed that his bonus was going to be withheld from him and that as of February 10 2015, he was terminated.

46. Robert Connolly ("Connolly"), then Director of Operations, who signed the termination letter, informed Plaintiff that he was equally shocked by the termination as Plaintiff was. Connolly stated that in his entire career with Verizon he never saw someone who had never been disciplined before be terminated for allegedly making an alteration to an

6

employee's timesheet, especially since any change that Plaintiff made was done with Human Resources' knowledge, direction and consent.

47. Connolly advised Plaintiff to write an appeal letter to Human Resources, specifically addressed to Williams. Connolly assisted Plaintiff in writing the letter and even went so far as to state that he believed the termination was not warranted.

48. Plaintiff never received a formal written response from Williams.

49. Upon information and belief, the Caucasian employee, Sarris, who sparked the entire investigation and who admitted to manipulating employee time sheets and refusing to pay employees for overtime worked, was not immediately disciplined, reprimanded, terminated or suspended as a result of the investigation.

50. Sarris was terminated only after Plaintiff submitted a letter to HR alleging that he was wrongfully discharged, retaliated against and asking to be reinstated.

51. Upon information and belief, Verizon treats employees of color disparately as compared to Caucasian employees.

52. Upon information and belief, Verizon failed to follow their own policies of progressive discipline as it related to the African-American employees and only disciplined Sarris to avoid the appearance of discrimination.

53. Upon information and belief, Caucasian employees of Verizon who have been caught committing more egregious offenses such as using the company car for personal use, using the company gas card to fill up personal vehicles and lying on their own time sheets regarding hours worked, were never summarily terminated.

54. For example, Cory Levy ("Levy"), a Caucasian male employee was found guilty by the internal Verizon Investigators of using the company gas card to fill up his personal

7

vehicle for years. Levy was investigated by David Busse. As per Verizon's internal handbook, the stealing of company funds for personal use is a terminable offense. However, Levy, upon information and belief, was not reprimanded, disciplined or punished in any way and to date continues to work for Verizon.

55. Similarly, Daniel Farrington ("Farrington") a Caucasian male employee was found guilty of allowing technicians to submit overtime hours that they never worked and receiving kickbacks from said technicians. Although Farrington was found guilty of stealing from Verizon he was never disciplined for the clearly terminable offense.

56. Moreover, Thomas Alias ("Alias"), a Caucasian male employee was found guilty of workplace violence when he punched and knocked out a shop steward technician. The steward was rushed to the hospital for medical attention. Alias was never disciplined for this incident.

57. Most recently, Christopher Ventura ("Ventura"), a Caucasian male employee was found to have poor leadership skills for failing to properly report an incident of workplace violence. Ventura was not terminated but was rather demoted and transferred to another department.

58. Plaintiff did not commit any offense as egregious as the offenses contained in paragraphs 44-57, yet he was summarily terminated while his Caucasian peers were never disciplined.

59. Upon information and belief, the reason Plaintiff was targeted and terminated was because he is an older African-American male that his Caucasian colleagues did not want to see advance within the company.

60. Plaintiff was targeted and terminated under false pretenses.

8

61. Since his termination, Plaintiff's health condition has deteriorated because of the stress caused by his termination.

62. Prior to his termination, Plaintiff was the picture of perfect health and had never even taken a sick day in his entire career.

63. Since his termination, Plaintiff has suffered from anxiety, loss of appetite, loss of sleep and an overall inability to function as a result of the stress from being unemployed.

64. Plaintiff has sought professional medical treatment for the anxiety and stress this situation has caused him.

65. During his employment with Verizon, Plaintiff endured a variety of racial slurs, including but not limited to: "Nigger Pot".

66. Plaintiff was told to do the "bitch work" in front of his subordinates because his skin color was darker than his fellow managers.

67. After those incidents, Plaintiff made a verbal complaint to his immediate supervisor, Patricia Brabant ("Brabant") about the racist comments.

68. Brabant informed Plaintiff that the situation would be taken care of but no changes occurred.

69. Upon information and belief, Plaintiff's supervisors informed colleagues that they wanted to see Plaintiff's "black ass out of there".

70. After Plaintiff was terminated, Alias informed Renee Thomson ("Thomson") that he "never liked that guy [referring to Blaise] and it's about time we took him out."

71. Upon information and belief, Alias took over Plaintiff's duties and replaced Plaintiff in the Nassau office.

9

72. Upon information and belief, Human Resources was informed of these racial epithets used against Plaintiff and rather than conducting an investigation they decided to unlawfully terminate Plaintiff under false pretenses.

73. Upon information and belief, Caucasian employees at Verizon are either never disciplined or at the minimum, are afforded with the right to be progressively disciplined, such as being given counseling notices, warnings, verbal reprimands, and written reprimands at least three times before they are terminated.

74. Those rights were not afforded to Plaintiff because he is an older African-American male who made complaints regarding his treatment in the workplace.

75. Upon information and belief, Plaintiff was replaced by a younger Caucasian male, Alias.

76. Alias is at least ten (10) years younger than Plaintiff.

77. Upon information and belief, after Plaintiff was terminated, Verizon managers continue to input time and adjust the time sheets of their subordinates in the same manner that Plaintiff did.

78. Upon information and belief, Plaintiff did nothing to warrant his termination and the termination was a pretext to legitimize the retaliatory and unlawful termination based on his race.

79. Upon information and belief, Verizon has a pattern and practice of discriminating against those employees who have made complaints regarding feeling discriminated against and who felt like they had been subjected to a hostile work environment.

80. Due to Verizon's unlawful and discriminatory actions, Plaintiff has lost his health insurance, life insurance coverage, 401k benefits, his livelihood and his health.

81. During his employment, Plaintiff was also overlooked for promotions. The most recent took palce on or about January 2014 when Plaintiff applied for a promotion and it was given to a Caucasian male named Eugene Cimaglia ("Cimaglia").Cimaglia did not have a Masters degree and had far fewer years of experience than Plaintiff.

### COUNT I
### VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964

82. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 81 inclusive, as if fully set forth herein.

83. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e, et seq.)

84. Defendant violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 by terminating him under false pretenses and failing to afford Plaintiff progressive discipline, because of Plaintiff's race, color and formal complaints of harassment.

85. Defendants created a hostile work environment for the Plaintiff because of Plaintiff's race and color.

86. As a result of Defendant's discriminatory acts, Plaintiff has suffered and is entitled to damages sustained to date and continuing in excess of the jurisdictional limits of this Court and to be determined at the trial herein, together with interest, punitive damages, attorneys' fees and costs of this action.

### COUNT II
### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

87. Plaintiff repeats and reallages each and every allegation set forth in paragraphs 1 through 86 inclusive, as if fully set forth herein.

11

88. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the ADEA (29 U.S.C. 621, et seq.).

89. Defendant's conduct as alleged above constitutes age discrimination in violation of the ADEA because Defendant treated Plaintiff in a disparate manner as compared to younger, similarly situated employees.

90. As a result of Defendant's discriminatory acts, Plaintiff has suffered and is entitled to damages sustained to date and continuing in excess of the jurisdictional limits of this Court and to be determined at the trial herein, together with interest, punitive damages, attorneys' fees and costs of this action.

## COUNT III
## VIOLATION OF ARTICLE 15 OF THE NEW YORK STATE HUMAN RIGHTS, EXECUTIVE LAW § 296

91. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 90 inclusive, as if fully set forth herein.

92. Plaintiff is covered under Article 15 of the New York State Human Rights, Executive Law § 296.

93. Defendant's actions as alleged herein violated Article 15 of the New York State Human Rights, Executive Law § 296.

94. As a result of Defendant's discriminatory acts, Plaintiff has suffered and is entitled to damages sustained to date and continuing in excess of the jurisdictional limits of this Court and to be determined at the trial herein, together with interest, punitive damages, attorneys' fees and costs of this action.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

(a)     Declaring Defendant's conduct complained of herein to be in violation of the Plaintiff's rights under Title VII of The Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Article 15 of the New York State Executive Law § 296;

(b)     Ordering Defendant to reinstate Plaintiff;

(c)     Awarding Plaintiff compensatory damages in the sum of as least One Million Dollars ($1,000,000.00);

(d)     Awarding Plaintiff punitive damages in the sum of at least One Million Dollars ($1,000,000.00).

(e)     Awarding Plaintiff the costs of this action together with reasonable attorneys' fees; and such other and further relief as this Court deems necessary.

**JURY DEMAND**

Plaintiff hereby demands a trial jury on all issues.


Dated: Mineola, New York
         January 6, 2017


                                        Yours, etc.

                                        _____
                                        Law Offices of Louis D. Stober, Jr., LLC
                                        By: Louis D. Stober, Jr., Esq.
                                        Attorneys for Plaintiff
                                        98 Front Street
                                        Mineola, New York 11501
                                        (516) 742-6546
                                        (516) 742-8603 fax


13

## **VERIFICATION**

State of New York    )

                           ) ss:

County of Nassau    )

GUY BLAISE, being duly sworn deposes and says:

I am the Plaintiff in the action herein. I have read the Complaint, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

 

_____

GUY BLAISE

Sworn to before me this
6th day of January, 2017

_____
Notary Public

LOUIS D. STORER
Notary Public, State of New York
No. _____
Qualified in _____ County
Commission Expires Oct. 31, 20 ___


EXHIBIT A

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
FAX (212) 336-3625

Guy Blaise
3450 Howard Blvd
Baldwin, NY 11510

Re:     Blaise v. Verizon New York, Inc.
        EEOC Charge No. 846-2015-16975

Dear Mr. Blaise:

The Equal Employment Opportunity Commission ("EEOC" or "Commission") has reviewed your charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce. In accordance with these procedures, we have evaluated your charge based upon the evidence provided.

You allege that you were subjected to retaliation and discriminated against by Verizon New York, Inc. ("Respondent") on the basis of your race, color, national origin, and age. Respondent's position statement has been previously shared with you. Your rebuttal to this position statement has been received and reviewed.

Based upon a review of information and documents submitted by you and the Respondent, the Commission is unable to conclude that the information establishes a violation of Federal law on the part of the Respondent. Although you may disagree with this determination, it is very unlikely that EEOC would find a violation if it invested additional resources. Therefore, the EEOC has decided not to further pursue its investigation of this charge and no further action will be taken by the Commission regarding this matter.

Enclosed is your Notice of Dismissal and Right to Sue. This determination is final. If you wish to pursue this matter on your own, you may file a lawsuit against the Respondent named in your charge in Federal District Court **within 90 days of receipt of your Notice of Dismissal and Right to Sue.**

Sincerely,

_____ for

Kevin J. Berry
District Director

NOV 0 1 2016
_____
Date

Enc.

cc: Albina Kataeva
    Law Offices of Louis D. Stober, Jr., LLC
    350 Old Country Road, Suite 205
    Garden City, NY 11530

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  Guy Blaise
     3450 Howard Blvd
     Baldwin, NY 11510

From:  New York District Office
       33 Whitehall Street
       5th Floor
       New York, NY 10004

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2015-16975 | Debra L. Richards, Investigator | (212) 336-3768 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry_
Kevin J. Berry,
District Director

NOV 0 1 2016

(Date Mailed)

Enclosures(s)

cc:  Natasha Campbell
     Director HR Compliance
     VERIZON
     One Verizon Way
     Basking Ridge, NJ 07920

Enclosure with EEOC
Form 161 (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 — *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    -- Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GUY BLAISE,

                                        Plaintiff,                    **VERIFIED
                                                                      COMPLAINT**

        -against-                                                     Jury Trial Demanded
                                                                      On All Issues
VERIZON NEW YORK, INC.

                                        Defendant.
------------------------------------------------------------------------X


_____

## VERIFIED COMPLAINT

_____


**Law Office of**
**LOUIS D. STOBER, JR., LLC**
**Attorneys for Plaintiff**
**98 Front Street**
**Mineola, New York 11501**
**(516) 742-6546**
**(516) 742-8603 fax**